450

HERMANN et al. v. McKESSON &
ROBBINS, Inc.

No. 214.

Circuit Court of Appeals, Second Circuit.

April 11, 1942.

Garrick M. Spencer, of New York City
(Garrick M. Spencer and Lester Stone,

both of New York City, of counsel), for
creditors-appellants.

Hodges, Reavis, Panataleoni & Downey,
of New York City (C. Frank Reavis and
Martin D. Jacobs, both of New York City,
of counsel), for debtor-appellee.

Before AUGUSTUS N. HAND,
CLARK, and FRANK, Circuit Judges.

PER CURIAM.

The creditors Hermann and Stebe each
filed a claim in the sum of $78,776.58 for
compensation as vice-president of the
debtor, McKesson & Robbins, Incorpo-
rated. The validity of the claims was chal-
lenged by the trustee of the debtor and the
referee made an order disallowing and ex-
punging each which, on a petition to re-
view, was affirmed by the District Court.
We think that the decision was right and
should be affirmed.

When F. D. Coster took over the control
of the old company of McKesson & Rob-
bins, Inc., and incorporated a new company
under the laws of Connecticut, he signed a
letter as president, bearing date December
10, 1926, in which he agreed to retain the
claimants Hermann and Stebe for five
years beginning November 10, 1926, to
make them vice-presidents at a salary of
$600 a month and in addition thereto to pay
each of them a bonus of one per cent of
the actual net profits of the corporation.
They entered upon their employment pur-
suant to this agreement and bonus pay-
ments were made up to the end of the year
1927. A dispute having arisen as to wheth-
er the bonus percentage was to be computed
upon the net earnings before or after the
payment of dividends, Coster, on August
20, 1929, issued other letters increasing the
salaries for the years 1929, 1930 and 1931
from $600 per month to $1,000 per month
and providing for a bonus of one per cent
of the net profits over and above the divi-
dends paid by the corporation, provided
the bonus should not exceed $5000 per year.
Under a letter of September 18, 1929, the
bonus for the year 1928 was credited to the
purchase price of certain shares of Mc-
Kesson & Robbins common stock at $38 per
share under an employee's plan, dated
October 15, 1928. This stock subscription
plan, which had been adopted by the di-
rectors September 28, 1928, offered all em-
ployees of the debtor and its subsidiaries
the privilege to subscribe for the stock of
the debtor at $38 per share. Each sub-
scription could be made by employees only

upon signing a formal subscription agreement which was to be delivered to the treasurer of the corporation. No employee was to be entitled to subscribe for more than 50 shares or for shares the total purchase price of which exceeded twenty per cent of his annual rate of salary, except "upon special recommendation of the president of the company by which he is employed and with the approval of the president of Maryland Company." All the stock available under the plan adopted September 28, 1928, had been subscribed for by others than the claimants, and on April 9, 1929, the directors provided for an additional issue at a price of $45 per share. It is to be noticed that the claimants never signed any subscription agreement or delivered it to the treasurer, but relied on the private letter of Coster dated September 18, 1929, and the price of $38 per share, though prior to that time the stock available for purchase at $38 per share was exhausted and the directors had authorized the issue of the additional shares at $45. It seems evident from the foregoing that the purchase at $38 was unauthorized, and so the referee held.

From January 1, 1929, claimants were paid a salary of $12,000 a year until August 1, 1930, when, because of the financial depression, all salaries were reduced ten per cent. A further reduction of ten per cent was made on June 1, 1931, and the claimants were thereafter paid at the rate of $9,720 per year. The five year contract provided for in the Coster letter of December 10, 1926, expired November 10, 1931, and there was testimony that prior to the expiration claimants had a verbal arrangement with Coster for a salary of $12,-000 per year, plus a flat bonus of $5,000, which was renewed every year thereafter. Claimants also testified that Coster agreed that the two salary cuts of ten per cent above referred to, while deductible from current salary, should be applied to the stock purchase subscriptions.

The claimants filed claims based upon the amount of unpaid one per cent bonuses for the years 1928, 1929 and 1930, and on the flat $5,000 bonus for 1931 and for later years up to the beginning of the reorganization proceeding, plus two ten per cent cuts in salary which, according to their testimony, were to be treated as additions to the bonus.

Claimants likewise testified that about April 1934 Coster said to them that they could consider their subscriptions "cancelled, the same as anybody else" and that: "The money that is due you will be put on the books for you. I am sorry I cannot give it to you now, but I will give it to you as soon as I can and when I can." The referee did not believe this testimony in view of the fact that the minutes of the executive committee of the debtor had recited on May 25, 1931, that "there were no outstanding subscriptions," and the further fact that these claimants were not likely to have continued to pay their subscriptions until 1934 when, following the stock market crash in 1929, all other subscribers had withdrawn and the accounts had been closed out by December, 1931. Moreover, the names of the claimants never appeared as subscribers in the corporate records.

The present reorganization proceeding was begun on December 8, 1939. Even if the agreement to apply the bonuses to the purchase of stock had been valid, the causes of action for the return of the money probably arose soon after December, 1929, and in any event had arisen by May 25, 1931, when the minutes of the executive committee of McKesson & Robbins, Inc. (Maryland) recited that "there were no outstanding subscriptions." Therefore, the claims for items accruing under the written contract which terminated November 10, 1931, are barred by the six-year statute of limitations, and so the referee held.

The oral agreements to pay claimants a salary of $12,000 and a fixed bonus of $5,000 (to be credited, together with the ten per cent cuts in salary to their stock purchases) which they say were made each year succeeding the expiration of the written contract of December 10, 1926, were also found by the referee never to have been made. This finding is based on the fact that these, as well as all other bonus items, were never reported for income taxes, though the salaries actually paid were, and also on the fact that in 1937, Hermann was introduced to a bank by Coster so that the former might obtain a loan of $5,000, and the letter of introduction recited that Hermann had a salary of $10,000. This was just about the amount of the salary received after allowing for the ten per cent cuts. It would seem strange that Hermann should be negotiating a bank loan of $5,000 at a time when, according to his testimony, about six times

that amount was due him from McKesson & Robbins. Moreover, the company first loaned him the $5,000 which was repaid through the bank loan. Hermann certainly had no need of borrowing money from the debtor when it owed him many times the loan. The referee was plainly justified in finding that the agreements for a flat bonus were never made. His finding is strengthened by the contradictory nature of claimants' testimony about the existence of the flat bonus of $5,000 and when it was agreed upon.

■ There is the further objection to all of the bonus claims that Coster lacked authority as president to make such engagements. The arrangements set forth in the letter of December 10, 1926 were for a share in the profits of the whole corporation, regardless of whether or not the departments in which the claimants were employed contributed anything thereto. The directors approved many employment contracts, as did the executive committee. Moreover, Article III, Section 5(c) of the By-Laws of the Connecticut Company provided that the directors should fix the salaries of all elective officers or might, in their discretion, delegate such power to the president. There was no proof of such a delegation to Coster. Article III, Section 13, of the By-Laws of the Maryland Company also provided that the salaries of officers should be fixed by the board of directors who might, however, delegate to the president the power to fix the salaries of officers appointed under Section 3 of Article III. The latter section related to "subordinate" officers. Even if officers like claimants, having the rank of vice-president, were regarded as "subordinate officers", there was no proof of any delegation to contract for bonuses. Moreover, on May 22, 1934, the salaries of the claimants of $9,720 (i.e., $12,000 less the ten per cent cuts) were specifically approved by the board of directors, without any mention of bonuses, which, as we have already said, were never entered in the books and, if ever promised, appear to have been arranged for by Coster under a secret agreement that was not binding on the company. Noyes v. Irving Trust Co., 250 App.Div. 274, 294 N.Y.S. 2, affirmed 275 N.Y. 520, 11 N.E.2d 323; Chard v. Ryan-Parker Construction Co., 182 App.Div. 455, 169 N.Y.S. 622; Mayhew v. Edward G. Budd Mfg. Co., 258 Mich. 381, 242 N.W. 737.

We hold that the findings of fact made as they were upon disputed testimony ought not to be disturbed and that the conclusions of law were entirely correct.

Order affirmed.